[No. 56353-5.   En Banc.   June 7, 1990.]

HAROLD MASON, ET AL, *Petitioners,* v. MORTGAGE AMERICA, INC., ET AL, *Respondents.*

*Dianna Timm Adams,* for petitioners.

*David C. Hemmelgarn* and *McCormick, Hoffman, Rees, Faubion, Quinn & Van Buskirk, P.S.,* for respondents American Mobile Homes, et al.

ANDERSEN, J.—

## FACTS OF CASE

This case concerns a dispute regarding the purchase of a mobile home wherein Mr. and Mrs. Mason (the purchasers) sued American Mobile Homes, Inc. (the mobile home seller), Mortgage America, Inc. (the lender) and James J. Griffiths (the site preparation contractor) for breach of contract and violation of the Washington Consumer Protection Act. The trial court awarded actual damages against the seller and lender, treble damages and attorneys' fees under the Consumer Protection Act and ordered conveyance of the purchasers' real estate back to them. The Court of Appeals reversed the trial court's award of actual damages, treble damages and attorneys' fees. The relevant facts are as follows.

In January 1984 the purchasers, having seen seller's advertisements, went to its lot. There, they selected a mobile home and contracted to purchase a "Commodore Comet" mobile home for approximately $34,000. The seller referred the purchasers to the lender, Mortgage America, Inc., for financing. In March 1984 the purchasers entered

an agreement with the lender wherein the lender agreed to finance the purchase of the mobile home and the site preparation of the purchasers' land in exchange for a note secured by a deed of trust on the purchasers' real estate. Although the "Agreement" stated that purchasers would grant a deed of trust to secure the obligation, the lender actually had them sign over their property by way of a quitclaim deed.

The lender instructed the purchasers to locate a site preparation contractor by soliciting bids. A bid to perform the work on the land submitted by James J. Griffiths (dba Northwest Septic & Excavating) for $7,725.48 was acceptable to both the purchasers and lender. Lender's agent, Wesley St. Clair, rewrote Mr. Griffiths' bid verbatim and added $800 as a charge to oversee the contractor's work. The work necessary to install the home which was listed in the bid essentially included clearing of the land, construction of a driveway, construction of concrete pads under the mobile home, installation of water lines and construction of a septic system. The bid specifically provided that all stumps and debris were to be piled for burning. The contract between the purchasers and Griffiths, the site preparation contactor, provided for three payments, the first due before work started, the second due after the land was cleared, the pads finished and the curtain drain installed, and the last upon completion.

There ensued a series of complaints by the purchasers concerning the quality and timeliness of the site preparation contractor's work. Instead of being piled to burn, the stumps and debris were pushed into a ravine on the property. There is evidence that the lender paid the second installment to the contractor over the purchasers' protests and before the work was finished in a satisfactory manner. On June 12, 1984, lender, at the urgings of the purchasers, told the contractor to stop work, informing him he was in breach of contract because the work had not been completed in a timely manner and because the work that had

been started was unsatisfactory. In its letter to the contractor, the lender demanded a total refund of the sum of the two payments made by lender (made pursuant to the lender's agreement with the purchasers) so that the work could be redone and completed. The same day the lender informed the contractor that he was terminated, it wrote to the purchasers informing them that the contractor had been ordered to stop work and also informing them that they should choose a new contractor to complete the work and that the completion costs would be for the purchasers to pay. Purchasers did not obtain a new contractor, but began work on the septic system themselves.

Meanwhile in April 1984 the seller delivered a "Commodore Cameo" mobile home to the partially prepared site on the purchasers' property. This home differed in a number of respects from the "Commodore Comet" which the purchasers had ordered. The trial court found that the substituted home was probably of equal value and utility though the evidence showed that the interior decor was substantially different (color, vinyl coverings, cabinets), that the model delivered had cathedral ceilings in only three or four rooms instead of throughout the home, and that the utility room was smaller in the Cameo than in the Comet. Purchaser, Mr. Mason, testified that he informed the seller that the wrong mobile home had been delivered, but that the seller referred him to the lender. He testified that when he then contacted the lender, it referred him back to the seller. Mr. Mason further testified that each of these parties told him the mobile home belonged to the other. In June 1984 the purchasers' attorney notified the lender in writing that they wished to rescind the purchase agreement. The mobile home remained on the property unoccupied until after this lawsuit was commenced. It was finally removed from the purchasers' property in December 1984.

In November 1984 the purchasers commenced this lawsuit against the seller, lender, contractor and various agents

(not presently involved) for breach of contract and warranties and violation of the Consumer Protection Act. Purchasers sought actual damages, treble damages up to the statutory limit of $10,000, attorneys' fees and costs. Following a bench trial, the trial court found that the purchasers were uninformed and uneducated consumers who selected a mobile home from seller's lot believing the one they selected would be delivered and that a different home was in fact delivered.[1] The trial court found that the contractor did not fully perform in accordance with his contract because of his termination but did add value to the purchasers' land in the amount of $5,750. The contractor was awarded $599.68 against the purchasers, the difference between the amount already paid by the lender to the contractor and the amount by which the value of the property had been enhanced.

The trial judge further found that Mr. St. Clair, agent of the lender corporation, reviewed, accepted and rewrote the contractor's bid and added $800 which represented a fee to be paid by the purchasers to the lender for the services of St. Clair[2] as a "specialist to oversee" the contractor's work. The court found that the lender had breached its contract to supervise the contractor's work[3] and that as a result of

---

[1]There was a somewhat obscure clause in the Earnest Money Purchase Agreement which stated "Together with the furnishings, accessories and services indicated hereon. . . . Even though the property is identified above by stock no., serial no. or as 'factory ordered', the Seller may substitute any other property which otherwise meets the description and specifications set forth herein. . . . See also Part 11, para. 2 and 4(e)." However, aside from the make of "Commodore", the model name of "Comet", the "approx floor size", the serial number and floor plan number, there were no descriptions or specifications for this home in that document. Additionally, there is no Part 11, para. 2 and 4(e) included in the Earnest Money Agreement exhibit. The trial court does not mention this clause and it is obvious from the finding that the wrong mobile home was delivered that the court did not believe this clause allowed the seller to substitute the delivered mobile home.

[2]The parties agree Mr. St. Clair was the lender's agent.

[3]Defendants argue that since the contractor (Griffiths) did not himself breach his contract with the purchasers, the lender could not have breached its contract

the unfair and deceptive acts of the lender and seller, the purchasers were damaged in the amount of $12,500. The court also found the lender was "tied to" the seller and the fault of one was the fault of the other.

The trial court concluded that there was a causal link between the unfair and deceptive acts of the seller and lender and the injuries suffered by the purchasers and awarded $12,500 in damages to the purchasers together with treble damages up to $10,000 and attorneys fees and costs of $7,500 under the Consumer Protection Act. The trial court also ordered the lender to reconvey the real property which the purchasers had previously quitclaimed to it.

On appeal, the Court of Appeals in an unpublished opinion affirmed as to the contractor, and reversed as to the seller and lender concluding that the purchasers had not sustained any damages and that therefore the award of treble damages and attorneys' fees under the Consumer Protection Act were not recoverable.[4]

The purchasers petitioned this court arguing that there was substantial evidence to support the trial judge's award of damages.[5] The seller and lender responded that in view of the court's order of rescission of the purchase contract

---

with the purchasers to supervise his work. This argument does not withstand scrutiny. All parties agree that the contractor was not an agent of the lender. His contract was with the purchasers. The purchasers had a separate contract with the lender for supervision of the project. The trial court found, based upon substantial evidence, that the lender breached its duty to oversee the contractor's work. Although the contractor did not breach his contract with the purchasers, neither did he complete the project. An expert witness testified that mobile home dealers are in the best position to know of the very specific requirements for site preparation for a mobile home. Therefore, the trial court's finding that the contractor was not in breach is not necessarily inconsistent with its finding that the lender failed to diligently oversee the project.

[4]*Mason v. Pejsa*, 54 Wn. App. 1031 (1989).

[5]The purchasers explain in their petition for review that they are not pursuing their appeal against the contractor. The contractor did not answer the petition for review and his cross appeal regarding denial of attorneys' fees has not been pursued in this court.

and order of reconveyance of the real property that the purchasers could not recover any damages or attorneys' fees under the Consumer Protection Act.

One basic issue is presented in this court.

ISSUE

Is the trial court's finding of $12,500 damages supported by substantial evidence in the record and are treble damages and attorneys' fees recoverable under the Consumer Protection Act?

CONCLUSION. We conclude that there is substantial evidence to support the trial court's award of damages, and that treble damages and attorneys' fees are recoverable under this state's Consumer Protection Act.

There is substantial evidence to show that the seller delivered the wrong mobile home and refused to remove it from the purchasers' property until after this lawsuit was commenced. There is also evidence to support the trial court's finding that the lender breached its contract to oversee the site preparation work on the purchasers' property and that it refused to reconvey the purchasers' real estate until ordered by the trial court to do so. Although Mr. St. Clair, as the lender's agent, copied the site contractor's bid verbatim and added an $800 fee for overseeing the site preparation, he testified at trial that he felt he had no duty to oversee the project.

■■ Contract damages are ordinarily based on the injured party's expectation interest and are intended to give that party the benefit of the bargain by awarding him or her a sum of money that will, to the extent possible, put the injured party in as good a position as that party would have been in had the contract been performed.[6]

The rule in Washington on the question of the sufficiency of the evidence to prove damages is: "[T]he fact of loss must be

---

[6]*Stevens v. Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 521–22, 768 P.2d 1007 (quoting *Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 46, 686 P.2d 465 (1984) (quoting Restatement (Second) of Contracts § 347, comment *a* (1981))), *review denied*, 112 Wn.2d 1023 (1989).

established with sufficient certainty to provide a reasonable basis for estimating that loss." *Wilson v. Brand S Corp.*, 27 Wn. App. 743, 747, 621 P.2d 748 (1980). Mathematical exactness is not required. *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.*, 66 Wn.2d 469, 476, 403 P.2d 351 (1965). *Haner v. Quincy Farm Chems., Inc.*, 97 Wn.2d 753, 757, 649 P.2d 828 (1982). The amount of damages is a matter to be fixed within the judgment of the fact finder.[7] A trier of fact has discretion to award damages which are within the range of relevant evidence.[8] An appellate court will not disturb an award of damages made by the fact finder unless it is outside the range of substantial evidence in the record, or shocks the conscience, or appears to have been arrived at as the result of passion or prejudice.[9]

As finder of fact, the trial court concluded the purchasers were damaged in the amount of $12,500, but did not explain how that figure was calculated.[10] The Court of Appeals somewhat summarily decided that the purchasers had sustained no damages, reversed the $12,500 damage award and the $10,000 CPA award, and also disallowed attorneys' fees.

Purchasers argue that they were damaged by the loss of the benefit of their contract, by the loss of use of their property for many months while it was occupied by the wrong mobile home, by being forced to initiate suit to have the wrong mobile home removed and their land reconveyed,

---

[7]*Rasor v. Retail Credit Co.*, 87 Wn.2d 516, 531, 554 P.2d 1041 (1976); *Sherwood v. Bellevue Dodge, Inc.*, 35 Wn. App. 741, 749, 669 P.2d 1258, 676 P.2d 557 (1983).

[8]*Cultum v. Heritage House Realtors, Inc.*, 103 Wn.2d 623, 633, 694 P.2d 630 (1985); *Kwik–Lok Corp. v. Pulse*, 41 Wn. App. 142, 149–50, 702 P.2d 1226 (1985).

[9]*Sherwood*, 35 Wn. App. at 749; *Rasor*, 87 Wn.2d at 531.

[10]The eminent trial judge is now deceased. It has proven possible, however, after a careful review of the record, to determine the elements of the trial judge's calculation of damages.

by incurring attorneys' fees and by the hardship of living with three children in a garage apartment while their property and its title were in limbo.

We have made a thorough review of the record to ascertain how the trial court reached its $12,500 award. The record shows that the sum of (1) the down payments paid by the purchasers, (2) the out of pocket expenses paid by them in completing the septic system and (3) the bids to repair and complete the site preparation work amounts to somewhat less than $12,000. The trial court evidently also allowed some recovery for the $599.65 the purchasers had to pay to the contractor, for the labor which purchaser Mr. Mason performed on the septic system, for the time lost from his employment during that labor or for loss of use of the property while it was occupied by the wrong mobile home. There was testimony in the record regarding all of these claimed items of damage.

However, there is a problem with this computation of damages in that it allows the purchasers to have their property reconveyed to them and to receive the benefit of the site preparation work without having paid any fee for such improvements. We thus conclude that while the damage award is sustainable, it must be reduced by the amount of the contract between the lender and the purchasers. If the lender had fully performed the contract to supervise the site preparation, the purchasers would have had to pay the lender $8,525. Therefore, the trial court's award of $12,500 damages to the purchasers must be diminished by that contract amount. By awarding the sum of money necessary to complete the site preparation work, reduced by the agreed contract price, purchasers will be put in the same position they would have been in had the contract been fully performed.

We next inquire as to whether the trial court's decision awarding treble damages and attorneys' fees under the Consumer Protection Act is sustainable.

RCW 19.86.020 provides:

> Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

In 1970, the Legislature amended the Consumer Protection Act to provide for a private right of action in which individuals would be encouraged to bring suit to enforce the Act.[11] RCW 19.86.090 provides in part:

> Any person who is injured in his or her business or property by a violation of RCW 19.86.020 . . . may bring a civil action . . . to enjoin further violations, to recover . . . actual damages . . . or both, together with the costs of the suit, including a reasonable attorney's fee, and the court may in its discretion . . . award . . . three times the actual damages sustained: *Provided*, That such increased damage award for violation of RCW 19.86.020 may not exceed ten thousand dollars . . .

RCW 19.86.920 provides in part:

> The legislature hereby declares that the purpose of this act is to . . . protect the public and foster fair and honest competition. . . . To this end this act shall be liberally construed that its beneficial purposes may be served.

■ In 1986 we decided *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986) which announced a new 5–element test for private causes of action under the Consumer Protection Act. The five elements of a private Consumer Protection Act action include: (1) an unfair or deceptive act or practice; (2) in the conduct of trade or commerce; (3) which impacts the public interest; (4) injury to the plaintiffs in their business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered.[12]

■ There is substantial evidence to support the trial court's finding that both the seller and lender engaged in unfair and deceptive acts and it is undisputed such acts occurred in the conduct of trade or business. In a consumer

---

[11]*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784, 719 P.2d 531 (1986).

[12]*Hangman Ridge*, at 780; *Travis v. Washington Horse Breeders Ass'n*, 111 Wn.2d 396, 405, 759 P.2d 418 (1988).

transaction the following inquiries are relevant to establish public interest: (1) Were the alleged acts committed in the course of defendant's business? (2) Are the acts part of a pattern or generalized course of conduct? (3) Were repeated acts committed prior to the act involving plaintiff? (4) Is there a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff? (5) If the act complained of involved a single transaction, were many consumers affected or likely to be affected by it?[13] No one of these factors is dispositive, nor is it necessary that all be present.[14] The first three elements of a Consumer Protection Act violation are present. The trial judge found that unfair and deceptive acts were committed in the course of defendants' business, and that there was an impact on the public interest in that the acts were part of a pattern of generalized conduct, committed prior to the deceptive acts involving the purchasers, and that there was a real and substantial potential for repetition. Upon appeal of nonjury trials "'respondents are entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact entered by the trial court.'"[15] There is substantial evidence to support the trial court's findings.

It is the fourth element, injury to business or property, which is the contested issue in the present case. The petition for review addressed to this court challenges the fourth (injury) element of the *Hangman Ridge* test. The answer to the petition for review argues that the purchasers sustained no damages compensable under the Consumer Protection Act. Therefore, under RAP 13.7(b), only the injury element is at issue in this appeal.

---

[13]*Hangman Ridge,* 105 Wn.2d at 790.

[14]*Hangman Ridge,* 105 Wn.2d at 791. *But cf. Travis v. Washington Horse Breeders Ass'n,* 111 Wn.2d 396, 407, 759 P.2d 418 (1988).

[15]*Lidstrand v. Silvercrest Indus.,* 28 Wn. App. 359, 364, 623 P.2d 710 (1981) (quoting *Hallin v. Bode,* 58 Wn.2d 280, 281, 362 P.2d 242 (1961)).

■ In *Hangman Ridge* we held that while the injury need not be great, it must be established.[16] In *Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 733 P.2d 208 (1987), we distinguished between the terms "injury" and "damages" and held that "[t]his distinction makes it clear that no monetary damages need be proven, and that nonquantifiable injuries, such as loss of goodwill would suffice for this element of the *Hangman Ridge* test."[17] The fact that the Act allows for injunctive relief bolsters the conclusion that injury without specific monetary damages will suffice.[18] A loss of use of property which is causally related to an unfair or deceptive act or practice is sufficient injury to constitute the fourth element of a Consumer Protection Act violation.[19] The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory violation are minimal.[20]

■ Even absent the harm compensated by the trial court's award of actual monetary damages, the purchasers sustained an injury which satisfies the fourth element of

---

[16]*Hangman Ridge,* 105 Wn.2d at 792.

[17]*Nordstrom, Inc. v. Tampourlos,* 107 Wn.2d 735, 740, 733 P.2d 208 (1987).

[18]*Nordstrom,* 107 Wn.2d at 740.

[19]*Webb v. Ray,* 38 Wn. App. 675, 688 P.2d 534, *review denied,* 103 Wn.2d 1010 (1984); *Tallmadge v. Aurora Chrysler Plymouth, Inc.,* 25 Wn. App. 90, 94, 605 P.2d 1275 (1979). *See also Keyes v. Bollinger,* 31 Wn. App. 286, 294, 640 P.2d 1077 (1982) (holding damages for construction defects and damages occasioned by such delays are within the ambit of the Consumer Protection Act).

[20]1 H. Alperin & R. Chase, *Consumer Law* § 136, at 194 (1986) (citing *Keyes v. Bollinger,* 31 Wn. App. 286, 640 P.2d 1077, 1083–84 (1982)); *St. Paul Fire & Marine Ins. Co. v. Updegrave,* 33 Wn. App. 653, 656 P.2d 1130, 35 A.L.R.4th 1 (1983). *See also Reiter v. Sonotone Corp.,* 442 U.S. 330, 338–39, 60 L. Ed. 2d 931, 99 S. Ct. 2326 (1979).

the *Hangman Ridge* test so as to permit recovery of attorneys' fees and costs under the Consumer Protection Act. The trial court ordered the lender to convey the purchasers' real estate back to them. The appropriateness of that order is not challenged. The loss of title to the purchasers' real property was obviously an "injury to property" within the purview of the Consumer Protection Act. Therefore, notwithstanding the actual damage award, the purchasers would have been entitled to reasonable attorneys' fees and costs under the Consumer Protection Act.

Whether an "injury" has been sustained so as to support an award of attorneys' fees and costs under the Consumer Protection Act is a different inquiry than whether treble damages are appropriately awarded.[21] An injury cognizable under the Act will sustain an award of attorneys' fees,[22] while treble damages are based upon "actual" damages awarded.[23] Since we have determined that the trial court's award of actual pecuniary damages is sustainable, a treble damage award available under the Act is allowable. Under RCW 19.86.090 a court may in its discretion increase the award of damages to an amount not to exceed three times the actual damages sustained provided that such increased damage award for violation of RCW 19.86.020 may not exceed $10,000. The trial court determined the acts of the seller and lender violated the Consumer Protection Act and that the purchasers were entitled to the maximum penalty award available under that statute. The actual damages awarded by the trial court were caused by the unfair and

[21]RCW 19.86.090; *St. Paul Insurance*, 33 Wn. App. at 660 (the failure to show actual monetary damages precludes the recovery of treble damages but it does not act as a complete bar to a recovery under the Act).

[22]*St. Paul Insurance*, 33 Wn. App. at 660; *Nordstrom*, 107 Wn.2d at 740, 743.

[23]RCW 19.86.090; 1 H. Alperin & R. Chase, § 144, at 213.

deceptive acts and practices of the defendants and hence are subject to the treble damage provision of the Consumer Protection Act. The actual damage award of $3,975 ($12,500 reduced by $8,525) is therefore to be trebled pursuant to the authority conferred in RCW 19.86.090.

As previously discussed, reasonable attorneys fees are recoverable under RCW 19.86.090 upon a finding of a Consumer Protection Act violation. Although the purchasers' attorney had originally appealed the trial court's reduction of attorneys' fees sought under the Act from $17,000 to $7,500 in the Court of Appeals, that issue has been abandoned in this court. Purchasers' petition for review seeks reinstatement of the trial court's award of attorneys' fees in the amount of $7,500. That award for attorneys' fees at the trial court level is affirmed.

■ Purchasers also seek attorneys' fees and costs on appeal to this court. Attorneys' fees on appeal are recoverable under the Consumer Protection Act to a successful plaintiff.[24] However, RAP 18.1(c) has not been complied with in that no affidavit detailing expenses has been filed.[25] The requirements of RAP 18.1 not having been complied with or waived, purchasers will not recover attorneys' fees in this court.[26]

---

[24] RCW 19.86.090; *Wilkinson v. Smith,* 31 Wn. App. 1, 15, 639 P.2d 768, *review denied,* 97 Wn.2d 1023 (1982); *Keyes,* 31 Wn. App. at 298.

[25] RAP 18.1 provides that if applicable law grants a party the right to recover reasonable attorneys' fees or expenses on review, the party should request them as provided in the rule. RAP 18.1(a). The rule requires that 7 days prior to oral argument, the party should serve and file an affidavit in the appellate court detailing the expenses incurred and the services performed by counsel, RAP 18.1(c), thus giving opposing parties and counsel the opportunity to rebut the claimed fees and to orally argue against them at the hearing before this court.

[26] *Local 112, Int'l Bhd. of Elec. Workers v. Bray,* 112 Wn.2d 253, 261, 770 P.2d 634, *cert. denied,* ___ U.S. ___, 107 L. Ed. 2d 374, 110 S. Ct. 409 (1989); *Donovick v. Seattle–First Nat'l Bank,* 111 Wn.2d 413, 418, 757 P.2d 1378 (1988) (U.S. appeal pending).

Reversed and remanded for entry of a judgment consistent with this opinion.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied July 25, 1990.