38 P.3d 1024 (2002)
Orly J. SORREL, Individually & On Behalf of All Others Similarly Situated, Appellant,
v.
EAGLE HEALTHCARE, INC., d/b/a Pinehurst Park Terrace, and Jeff C. Marshall, Respondent.
No. 47667-0-I.
Court of Appeals of Washington, Division 1.
January 22, 2002.
Reconsideration Denied March 18, 2002.
*1026 Orly J. Sorrel, Sorrel & Tall, Seattle, for Appellant.
James McBride, Julin Fosso Sage McBride & Mason, Redmond, for Respondent.
*1025 BAKER, J.
Orly Sorrel sued Eagle Healthcare when it failed to timely refund unearned charges for nursing home care. The court dismissed the action on summary judgment. Because Eagle Healthcare unlawfully retained possession of funds to which Sorrel was entitled, he suffered sufficient injury to maintain his Consumer Protection Act claim. We reverse in part.

I
Orly Sorrel admitted his wife to Pinehurst Park Terrace nursing home. He signed the admission agreement as the party responsible for payment. As required by the agreement, he paid for 18 days of care in advance. One week later, Ms. Sorrel died and her remains were removed from the facility the same day.
After 10 days, Sorrel called Pinehurst to inquire about a refund of the unused portion of the prepayment. He was advised to submit his request in writing, which he did. Neither Pinehurst nor its parent company, Eagle Healthcare, responded. Two weeks later, Sorrel again requested a refund, to no avail. When more than five weeks had passed since the death of his wife, he sent a third and final letter threatening suit if he did not receive payment within three days.
A week later, Sorrel received a check from Eagle Healthcare issued to the estate of Joyce Sorrel in the amount of the unused prepayment. Sorrel returned the check because there was no probate and thus no legal entity known as the Estate of Joyce Sorrel, and because the check did not include accrued interest. He filed suit for a full refund, prejudgment interest, Consumer Protection Act violations and for certification as a class. His action was dismissed on summary judgment. Sorrel appeals.

II
Sorrel first argues that his breach of contract claim should not have been dismissed because Eagle Healthcare was statutorily required to refund any unearned prepaid charges within 30 days of his wife's death. He contends that Eagle's failure to comply with the statute breached the parties' agreement.[1] Chapter 70.129 RCW governs the rights of long term facility residents, and specifically addresses the time within which a refund of prepaid charges must be made, as follows:
If a resident dies or is hospitalized or is transferred to another facility ... the facility shall refund any deposit or charges already paid less the facility's per diem rate for the days the resident actually resided ... in the facility notwithstanding any minimum stay policy or discharge notice requirements.... All long-term care facilities or nursing facilities covered under this section are required to refund any and all refunds due the resident or his or her representative within thirty days from the *1027 resident's date of discharge from the facility....[2]
Sorrel argues that the statute plainly applies to his circumstances. Eagle Healthcare asserts that the 30-day period applies only to hospitalized or transferred residents, because residents who die cannot be discharged.
Interpretation of a statute is a question of law that we review de novo.[3] When interpreting a statute, the first principle a court follows is that it does not construe unambiguous statutes.[4] A statute is ambiguous only if it is susceptible to more than one reasonable interpretation.[5] A court should not discern ambiguity simply because more than one interpretation is conceivable.[6]
The term, discharge, means to release from confinement, custody, or care....[7] Because a resident who has passed away is released from custody, no ambiguity exists in RCW 70.129.150(1). If a statute is plain and unambiguous, its meaning must be derived from the wording of the statute itself and courts assume the Legislature means exactly what it says.[8] The only reasonable interpretation of RCW 70.129.150(1) is that the 30-day refund policy applies to all residents described in the statute. It does not exclude those discharged by reason of death.
Eagle nevertheless argues that the statute could not have included death in the scope of discharge because a different statute, RCW 70.129.110, prescribes the circumstances and procedures by which a nursing home may discharge a resident, which conditions are impossible to satisfy if the resident has passed away. RCW 70.129.110 ensures residents the right to remain in a facility unless necessary (a) for the resident's welfare, (b) for the safety or health of others in the facility, (c) because of failure to pay, or (d) the facility ceases to operate. In those events, a nursing home must abide by specific notice requirements and other procedures before it may initiate the discharge.[9] But the function of the statute is to protect the right of long-term residents to remain in a facility. It does not modify the plain meaning of discharge under RCW 70.129.150(1).
We likewise reject Eagle's contention that the 45 day grace period under RCW 74.46.711[10] applies. Chapter 74.46 RCW is entitled Nursing Facility Medicaid Payment System and addresses reporting requirements, audits, and other administrative requirements of nursing facilities who care for Medicaid residentsa subject much removed from the resident rights addressed under Chapter 70.129 RCW. The statute Eagle cites concerns itself with the refund of a deceased resident's personal funds. Personal funds are monies belonging to a resident held in trust by the facility,[11] not prepaid charges. The statute does not apply.
Eagle next claims that Sorrel's action was properly dismissed because he failed to seek nonjudicial remedies before filing suit. Because Eagle did not raise this issue to the trial court, we decline to consider it.[12]
Finally, Eagle argues that even if it failed to timely refund Sorrel's prepaid charges, we may still affirm dismissal because the only damages Sorrel can prove consists of interest on the refund accrued over a period of days. Dismissal of an action for damages where no property or personal *1028 rights are involved need not be reversed if damages are nominal.[13] This is because the law does not deal with trifles.[14]
Sorrel asserts that his damages include the principal amount of the refund, which is not nominal, because Eagle issued a non-negotiable check. The proper payee on a check is determined by the intent of the signer of the check.[15] This is true even if the intended payee is identified on the check by a name or other identification that is not that of the intended person.[16] It is the intent of the issuer that is dispositive of the identity of the proper payee, not the name on the instrument. In this case, Eagle issued the check to the Estate of Joyce Sorrel, rather than to Sorrel himself. But it does not dispute that Sorrel was the intended payee. This intention, and not the actual entity listed as payee, controls. Sorrel could have negotiated the check.
Sorrel similarly could not refuse payment on grounds that the payment did not include interest for those days exceeding 30 during which Eagle Healthcare retained possession of the funds. Negotiating a check does not preclude a claim for interest and other damages, because accord and satisfaction can be shown only if the debtor (1) tenders payment (2) on a disputed claim, (3) communicating that the payment is intended as full satisfaction of the disputed claim, and (4) the creditor accepts the payment.[17] Eagle's check did not state that it was intended as a full accord and satisfaction. Moreover, Sorrel could have advised Eagle that negotiation of the check would not affect his claim for interest. Thus, the only claim for damages Sorrel has is the amount of interest that accrued during the period of time exceeding 30 days that Eagle did not refund his money. Eagle is correct that these damages are nominal. Sorrel's breach of contract claim was properly dismissed.

III
Sorrel next argues that the court erred in dismissing his Consumer Protection Act claim on the basis that he suffered no damages. Washington's Consumer Protection Act (CPA) prohibits those in trade or commerce from engaging in unfair or deceptive practices in the course of business with consumers.[18] Persons injured in their business or property in violation of the Act may bring a civil action for injunctive relief, actual damages sustained, and reasonable attorney fees and costs.[19] To prevail on a CPA claim, a plaintiff must prove each of the following five elements:
1) That the defendant engaged in an unfair or deceptive act or practice;
2) occurring in trade or commerce;
3) that affects the public interest; and
4) causes injury;
5) to plaintiff in his or her business or property.[20]
Failure to satisfy even one of the elements is fatal to a CPA claim.[21] Only elements 4 and 5 are at issue here.
Eagle contends that Sorrel's claim must fail because he cannot establish that he suffered damages. But under the *1029 CPA, injury is distinguished from damages.[22] No monetary damages need be proven so long as there is some injury to property or business.[23] Sufficient injury to satisfy the fourth and fifth elements of a Consumer Protection Act claim is established when a plaintiff is deprived of the use of his property as a result of an unfair or deceptive act or practice.[24] In this case, Sorrel was denied rightful possession of his funds for a period of two weeks. His CPA claim should not have been dismissed for failure to establish injury.
Eagle alternately argues that its failure to refund prepaid charges within 30 days was not deceptive or unfair because it did not act in bad faith. But Eagle did not move for summary judgment on this basis. Where the trial court had no opportunity to address the issue, we decline to consider it.[25] For the same reason, we also decline to review Eagle's contention that equitable estoppel bars Sorrel's claim.

IV
Sorrel next contends that the trial court should not have denied class certification to his suit. Plaintiffs seeking class certification must satisfy the following prerequisites:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.[26]
In addition, they must show (1) that individual suits create a grave collateral estoppel risk or threaten inconsistent judgments; or (2) that injunctive relief may be necessary; or (3) that a class action is superior to other means of proceeding.[27]
A court's determination of whether class certification is appropriate must be made independently, with no consideration of the merits of the claims.[28] A court must articulate on the record its consideration of each of the factors under CR 23, which formed the basis of its ruling.[29] A court abuses its discretion if it fails to make the appropriate consideration or if its denial of class certification is the practical effect of its rulings on substantive issues.[30] In this case, the trial court did not address the factors for consideration under CR 23. Its denial was the practical effect of the court's dismissal of Sorrel's substantive claims. We therefore remand for proper consideration of the issue by the trial court.
Because Eagle has not substantially prevailed, we decline its request for costs on appeal.[31] We likewise reject Sorrel's claim for attorney fees on appeal under the parties' admission agreement and RCW 4.84.010 because his breach of contract claim was properly dismissed.[32] As the substantially prevailing party, Sorrel is entitled to an award of costs under RAP 14.2. Sorrel's claim for attorney fees under the Consumer Protection Act shall abide the result of that claim on remand.
*1030 Finally, both parties request the imposition of sanctions against the other. Because Sorrel's appeal was not frivolous and any possible misstatements of fact by Eagle were not material, we deny both requests.
REVERSED in part. AFFIRMED in part.
WE CONCUR: AGID, C.J., and ELLINGTON, J.
NOTES
[1] Where a long-term care facility ... requires the execution of an admission contract ... the terms of the contract shall be consistent with the requirements of this section.... RCW 70.129.150(2).
[2] RCW 70.129.150(1).
[3] State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996).
[4] Davis v. Dep't of Licensing, 137 Wash.2d 957, 963-64, 977 P.2d 554 (1999).
[5] Berger v. Sonneland, 144 Wash.2d 91, 105, 26 P.3d 257 (2001).
[6] Berger, 144 Wash.2d at 105, 26 P.3d 257.
[7] Webster's Third New International Dictionary, p. 644 (1969).
[8] Berger, 144 Wash.2d at 105, 26 P.3d 257.
[9] RCW 70.129.110.
[10] The current version of the statute, which provides for a 30-day refund period, was not in effect at the time of these proceedings.
[11] RCW 74.46.700.
[12] RAP 2.5(a).
[13] Robinson v. Davis, 158 Wash. 556, 562, 291 P. 711 (1930) (dismissal proper against manager of bank who sued investors, who failed to make payment allegedly causing bank insolvency).
[14] Robinson, 158 Wash. at 562, 291 P. 711.
[15] RCW 62A.3-110(a).
[16] RCW 62A.3-110(a). Note, RCW 62A.3-110(c)(2)(i), which provides that if a check is payable to an estate, then the check is payable to the trustee, representative or successor of that estate. This is not applicable here because there is no estate in this case.
[17] Douglas Northwest, Inc. v. Bill O'Brien & Sons Const., Inc., 64 Wash.App. 661, 685-86, 828 P.2d 565 (1992).
[18] Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. RCW 19.86.020.
[19] RCW 19.86.090.
[20] Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash.2d 778, 780, 719 P.2d 531 (1986).
[21] Hangman Ridge, 105 Wash.2d at 793, 719 P.2d 531.
[22] Mason v. Mortgage America, Inc., 114 Wash.2d 842, 854, 792 P.2d 142 (1990) (wrongful loss of title to property was injury to property entitling plaintiffs to award of attorney fees, despite no monetary damages shown).
[23] Mason, 114 Wash.2d at 854, 792 P.2d 142.
[24] Mason, 114 Wash.2d at 854, 792 P.2d 142.
[25] RAP 2.5(a).
[26] CR 23(a).
[27] CR 23(b); Wash. Educ. Ass'n (WEA) v. Shelton School Dist. No. 309, 93 Wash.2d 783, 789, 613 P.2d 769 (1980).
[28] WEA, 93 Wash.2d at 790, 613 P.2d 769 (denial of class certification reversed and remanded where court failed to articulate consideration of factors under CR 23).
[29] WEA, 93 Wash.2d at 793, 613 P.2d 769.
[30] WEA, 93 Wash.2d at 790, 793, 613 P.2d 769.
[31] RAP 14.2.
[32] The measure and mode of compensation of attorneys and counselors, shall be left to the agreement.... RCW 4.84.010.