

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| WALL STREET APARTMENTS, LLC, a Washington limited liability company; and ALAA ELKHARWILY, M.D. | ) ) ) ) | No. 37512-9-III |
| Appellants. | ) ) ) | ORDER: (1) DENYING MOTION FOR RECONSIDERATION, AND (2) AMENDING OPINION |
| v. | ) ) | |
| ALL STAR PROPERTY MANAGEMENT, LLC, a Washington limited liability company; GIEVE PARKER, individually and on behalf of her marital community, | ) ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| JOHN DOES and JANE DOES I through X, | ) ) ) | |
| Defendants. | ) ) | |

THE COURT has considered appellants Wall Street Apartments, LLC and Alaa

Elkharwily, M.D.,'s motion for reconsideration of our April 19, 2022, opinion; and the

record and file herein.

IT IS ORDERED that the appellants' motion for reconsideration is denied.

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

IT IS FURTHER ORDERED that the court's April 19, 2022, opinion is amended as follows:

The second sentence in the first paragraph on page eight, including footnote two, is stricken from the opinion and replaced with the following:

> The trial court denied Wall Street's motions for reconsideration, a new trial, and relief from judgment, but granted in part the motion for amended findings of fact and conclusions of law. *See* CP 1382-1407.

PANEL: Judges Pennell, Fearing and Lawrence-Berrey

FOR THE COURT:

_____
LAUREL H. SIDDOWAY
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| WALL STREET APARTMENTS, LLC, a Washington limited liability company, and ALAA ELKHARWILY, M.D., | ) ) ) ) | No. 37512-9-III |
| Appellants. | ) ) | |
| v. | ) ) | |
| ALL STAR PROPERTY MANAGEMENT, LLC, a Washington limited liability company; GIEVE PARKER, individually and on behalf of her marital community, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Respondents, | ) ) | |
| JOHN DOES and JANE DOES I through X, | ) ) ) | |
| Defendants. | ) | |

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

PENNELL, J. — Wall Street Apartments, LLC and Dr. Alaa Elkharwily (collectively Wall Street) appeal an adverse judgment in favor of All Star Property Management, LLC and Gieve Parker (collectively All Star). We affirm and award All Star attorney fees on appeal.

FACTS

Dr. Alaa Elkharwily was the CEO of Wall Street Apartments. Through Wall Street, Dr. Elkharwily owned an apartment building at 225 South Wall Street (the Wall Street building) in Spokane. On September 2, 2012, Wall Street entered into an agreement with All Star to manage units in the Wall Street building. All Star was owned by Ronald and Gieve Parker.

The management agreement tasked All Star with duties:

    1.  To use due diligence in the management of the premises . . . and agrees to furnish services for the renting, leasing, operating, and managing of the above mentioned premises.
    2.  To render monthly statement of receipts, expenses, and charges and to remit the same to the Owner together with receipts less disbursement. In the event the disbursements are in excess of the rents collected by All Star Property Management, the Owner hereby agrees to pay such excess promptly upon demand . . . .
    3.  To deposit all receipts collected for the Owner (less any sums properly deducted or as otherwise provided for herein) in a pooled Trust account . . . .
    4.  To advertise the availability for rental of the above-referenced premises . . . to sign, renew and/or cancel or terminate leases for the

2

> premises or any part thereof; to collect rents due or to become due and give receipts therefore; to terminate tenancies and to sign documents in the Owner's name.
>
> . . . .
>
> 6. To make or cause to be made and to supervise repairs, expenses, and charges and to remit to Owner receipts less disbursement. In the event the disbursements shall exceed of [sic] the amount of rents collected by All Star Property Management, the Owner hereby agrees to pay such excess promptly upon demand . . . .
>
> 7. To make or cause to be made and to supervise any alterations, and to do maintenance on the above-referenced premises; to purchase supplies and pay all bills thereof. All Star Property Management agrees to secure the prior approval of the Owner on all expenditures in excess of <u>$1.00</u> for any one item . . . .
>
> . . . .
>
> 9. To hire, discharge, and supervise all labor and employees required for the operation and maintenance of the premises. . . .

Ex. P1, at 1-2. In consideration for All Star's work, Wall Street agreed to pay six percent of the monthly rental rate, $100.00 for each new signed lease, all rental income in excess of $533.00, and $0.55 per mile to pick up and deliver materials to any job site.

In meetings with the Parkers around the time the management agreement was signed, Dr. Elkharwily expressed his intent to renovate the interior of the Wall Street building. All Star did not agree to perform the remodeling.

On September 12 and 13, 2012, All Star secured tenants for apartment 19 of the Wall Street building. Ms. Parker collected $685.00 from the new tenants and placed the funds in trust accounts. Ms. Parker also collected $300.00 in rent from apartment 18 on

September 22. A receipt dated September 22 noted the apartment as "# 5 Was 18."

Ex. D133. In the month of September, All Star incurred $1,517.39 in expenses for travel and materials at the direction of Wall Street.

On September 26, demolition began on an interior wall in the lobby of the Wall Street building. At 4:00 p.m. that day Ms. Parker sent a text message to Dr. Elkharwily containing a photo of Christopher Godwin, a handyman for Dr. Elkharwily who lived at the Wall Street building, demolishing the lobby wall. On the wall were two components of the building's fire alarm system—a fire panel, and a fire box (i.e., the electric box supplying the fire alarm system with power).

At 10:25 a.m. on September 27, Ms. Parker sent Dr. Elkharwily a text message informing him she quit after the two had a heated dispute over garbage bags. Dr. Elkharwily accepted the resignation. After she quit, Mr. Godwin helped Ms. Parker load her truck with various supplies from the Wall Street building, which had been purchased by All Star. Ms. Parker returned some of these supplies to the stores where they were purchased. Ms. Parker made multiple trips to the Wall Street building to collect items from the building's hall and the office after she quit. Mr. Godwin ultimately departed the Wall Street building with Ms. Parker after the last trip.

Around 7:00 p.m. on September 27, Dr. Elkharwily became aware that the lobby wall had been demolished and the fire alarm system disconnected. The fire department had called Dr. Elkharwily and informed him the Wall Street building was without a working fire alarm system, and would be condemned unless he established a fire watch program. Dr. Elkharwily proceeded to hire individuals to perform a constant fire watch until the fire alarm system could be replaced several days later.

Over the ensuing days, Dr. Elkharwily accused Ms. Parker of dismantling the lobby wall and removing the fire alarm system. Ms. Parker denied the accusations, directed him to call the phone number on the fire box, and demanded payment for All Star's unpaid $1,517.39 in expenses.

On October 12, Ms. Parker sent Dr. Elkharwily two envelopes via certified mail. One envelope contained all the apartment and office keys. The other contained invoices for All Star's outstanding expenses, account statements, leases, and a check for funds in tenant trust accounts.

In 2015, Wall Street sued All Star. The complaint contained nine causes of action, including breach of contract, breach of implied covenant of good faith and fair dealing, and violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW.

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

All Star answered the complaint and also asserted a counterclaim for $1,517.39 in outstanding expenses.

Most of Wall Street's claims were dismissed on summary judgment based on a lack of evidence. The trial court later characterized Wall Street's surviving claims as follows:

1. Whether [All Star] breached its management duties concerning due diligence, collecting and turning over rent, demolishing a lobby wall [without permission], and incurring unauthorized purchases over $1.
2. Whether [All Star] breached its implied covenant of good faith and fair dealing concerning production of monthly statements, the demolition of the lobby wall . . . and the removal of the fire alarm [system].

Clerk's Papers (CP) at 1098.

The remaining claims initially went to mandatory arbitration in January 2019. An arbitrator found in favor of Wall Street, issuing an award of $7,949.00 against All Star. Wall Street exercised its right to request a trial de novo under former[1] Superior Court Mandatory Arbitration Rule (MAR) 7.1 (2011) and Spokane County Local Superior Court Mandatory Arbitration Rule (LMAR) 7.1(a). All Star later offered to settle with Wall

---

[1] The Superior Court Mandatory Arbitration Rules (MAR) were renamed the Superior Court Civil Arbitration Rules (SCCAR) effective December 3, 2019.

Street for $2,796.30, a figure All Star arrived at by subtracting a $5,152.70 judgment it had against Wall Street in another case from the $7,949.00 arbitration award.

Wall Street rejected All Star's settlement offer and proceeded with a de novo bench trial. At trial, the parties presented conflicting testimony over what happened during their short business relationship. Dr. Elkharwily testified that Ms. Parker engaged in a course of intentionally wrongful conduct. He claimed Ms. Parker was solely responsible for tearing down the lobby wall and did so out of frustration; she made unauthorized purchases of supplies; and after her departure, business records, supplies, and tools were missing. Ms. Parker denied Dr. Elkharwily's allegations. According to Ms. Parker, Dr. Elkharwily was responsible for directing the destruction of the lobby wall. She also denied removing any business records or making unauthorized purchases.

The trial court ruled in favor of All Star, finding Wall Street had submitted insufficient facts and the conflicting testimony favored All Star. The court concluded Wall Street breached its duty to pay All Star for expenses, and awarded All Star $1,321.57 in damages.

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

Wall Street subsequently moved for reconsideration, a new trial, amended findings, and relief from judgment. The parties represent[2] that the court granted Wall Street's motion in part, and entered amended findings of fact and conclusions of law. The trial court's amended findings did not change the case's ultimate disposition.

All Star moved for an award of attorney fees and costs. First, All Star requested $29,920.00 in postarbitration attorney fees and $997.73 in costs under RCW 7.06.060 and former MAR 7.3.[3] Second, All Star requested $28,526.80 in prearbitration attorney fees and $633.60 in costs under RCW 4.84.185 and CR 11. In response, Wall Street contended All Star's postarbitration fee request was duplicative of work performed prior to arbitration.

The trial court granted All Star's requests. It found Wall Street failed to improve its position on trial de novo, entitling All Star to fees and costs under RCW 7.06.060 and former MAR 7.3. The court also found Wall Street should have known it was unlikely to prevail at trial due to a lack of supporting evidence, entitling All Star to fees and costs under RCW 4.84.185. Finally, it found:

---

[2] Neither the trial court's order granting the appellants' motion in part nor the amended findings of fact and conclusions of law are included in the record on review.

[3] *See* footnote 1, *supra.*

8

> Elkharwily pursued litigation against Defendants in bad faith and for an improper purpose. This includes relying on incoherent, inadmissible, and nonexistent evidence at summary judgment, at which time all but one of Plaintiffs' claims were dismissed, as well as producing indecipherable testimony and exhibits at trial.

Order Granting Defs.' Mot. for Att'y's Fees and Costs at 3. This entitled All Star to attorney fees and costs under CR 11. The court found the amounts presented and detailed by All Star to be reasonable and necessary to defend against Wall Street's claims, and awarded it the amounts requested.

Wall Street now appeals the order granting partial summary judgment, the judgment in favor of All Star, and the order granting All Star's attorney fees and costs.

## ANALYSIS

This appeal raises four issues: (1) whether substantial evidence supports the trial court's findings in favor of All Star on the two substantive claims submitted at trial, (2) whether the trial court properly granted summary judgment on Wall Street's CPA claim, (3) whether the trial court properly awarded attorney fees, and (4) whether All Star should be awarded attorney fees on appeal.

*Substantial evidence*

We review the factual findings of a trial court in a bench trial for substantial evidence. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "'Substantial

9

evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). "[T]his court must defer to the finder of fact in resolving conflicting evidence and credibility determinations." *State v. N.B.*, 7 Wn. App. 2d 831, 837, 436 P.3d 358 (2019).

Wall Street's arguments on appeal fail to acknowledge the applicable standard of review. Rather than recounting the evidence in a manner consistent with the trial court's findings, Wall Street construes the evidence in its favor and then disingenuously claims the evidence is admitted or uncontested. Wall Street's failure to recognize the standard of review renders its briefing largely unhelpful and undercuts its claim for relief on review.

*The alarm system*

All Star presented substantial evidence showing Ms. Parker was not aware of the dismantlement of the fire alarm system, and did not assume responsibility for its removal. The Parkers both testified they did not expect the lobby wall to be demolished in September 2012. Ms. Parker testified she quit on the morning of September 27. She testified that the last time she saw the lobby wall in the Wall Street building, the fire alarm system was still connected. Both Ms. Parker and Mr. Godwin testified she had no involvement in the removal of the fire alarm system. All parties agree Ms. Parker left the building for the final time before 7:00 p.m. on September 27, when the first evidence the

fire alarm system had been dismantled arose. No evidence of Ms. Parker's direct involvement in the dismantlement of the fire alarm system was ever presented. The trial court had ample evidence to support the conclusion that Ms. Parker did not know of, or personally become involved in, the removal of the fire alarm system.

## Return of property and documents

The trial court's finding that Ms. Parker returned all keys, documents, and a refund check to Dr. Elkharwily was supported by substantial evidence. Ms. Parker testified she sent Dr. Elkharwily two envelopes containing her keys,[4] account statements, leases, and a check. She denied removing any business records from the Wall Street building's office, and Mr. Godwin provided similar testimony.

## Ms. Parker's return to the Wall Street building

The trial court's finding that Ms. Parker did not return to the Wall Street building after she quit on September 27 was, in context, supported by substantial evidence. Wall Street is correct that after she quit, Ms. Parker made multiple trips to and from the Wall Street building to collect and return unused supplies to the store. However, the court's

---

[4] Contrary to Wall Street's repeated assertions, Ms. Parker did not admit to retaining the only set of keys that would have allowed access to the fire alarm system. She testified her keys were all duplicates.

11

finding should not be read in isolation. The finding pertained to Wall Street's claims that

Ms. Parker returned to the Wall Street building at some point on September 27 to move a

tenant and collect $2,200 in rent. Wall Street presented no evidence at trial to support its

claim that Ms. Parker returned to the Wall Street building on September 27 to do these

things. On the contrary, the receipt and invoice referred to by Wall Street clearly state the

rent was collected on September 22. The only evidence of Ms. Parker's activities at the

Wall Street building after she quit was testimony from Ms. Parker and Mr. Godwin that

Ms. Parker collected supplies from the hall and office of the building. Substantial

evidence supports the court's finding.

*Provision of receipts*

The parties' management agreement required All Star "[t]o render monthly

statement of receipts, expenses, and charges and to remit the same to the Owner together

with receipts less disbursement." Ex. P1, at 1. This language did not specifically require

All Star to provide return receipts to Wall Street for items purchased on Wall Street's

behalf but returned to the store. The meaning of "receipts" becomes clear when read in

the context of the management agreement as a whole. For example, the agreement

assigned All Star the duty "to collect rents due or to become due and give receipts

therefore" and then "[t]o deposit all receipts collected for the Owner (less any sums

12

properly deducted or as otherwise provided for herein) in a pooled Trust account."

Ex. P1, at 1.

Substantial evidence supports the trial court's determination that Ms. Parker provided receipts as the term is set forth above. Neither the trial court nor this court is required to accept Dr. Elkharwily's personal opinion regarding the definition of receipts.

*Calculation of damages*

The trial court's damage calculation falls within the range of the trial evidence. All Star presented an invoice detailing $1,517.39 in expenses they had incurred for purchases pre-authorized purchase for supplies and related mileage. The court dedicated substantial time at trial to the issue of these unpaid expenses, and its final damage award of $1,321.57 was within the range of evidence presented and between the amounts argued for by both parties. As the finder of fact, the court was entitled to disregard Wall Street's evidence and arguments as to the proper calculation of damages. While the court's exact reasoning for arriving at this precise figure is unclear, mathematical exactness is unnecessary. *See Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 850, 792 P.2d 142 (1990). The court's award of damages does not exist outside the range of evidence, shock the conscience, or result from passion or prejudice. The calculation of damages was not an abuse of discretion and will not be disturbed on appeal.

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

*Summary judgment*

We review a summary judgment order de novo, "performing the same inquiry as the trial court." *Colo. Structures, Inc. v. Blue Mountain Plaza, LLC*, 159 Wn. App. 654, 661, 246 P.3d 835 (2011). "When ruling on a summary judgment motion, the court is to view all facts and reasonable inferences therefrom most favorably toward the nonmoving party." *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). "A court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.*

The summary judgment process involves burden shifting between the parties. A defendant moving for summary judgment initially bears the burden of showing the absence of a material issue of fact for trial. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If this is met, the burden shifts to the plaintiff as the party with the ultimate burden of proof at trial. *Id*. The plaintiff must proffer the existence of admissible evidence sufficient to sustain each element of its case. *Id*. If the plaintiff fails to meet this burden, the defendant is entitled to judgment as a matter of law. *Id.*

The trial court properly dismissed Wall Street's CPA claim on summary judgment. After All Star moved for summary judgment on the CPA claim, Wall Street argued, for

14

the first time, that its claim rested on the assertion that Ms. Parker filed a lien without

providing the necessary prefiling notice. But Wall Street failed to back up this assertion

with any proof. Given Wall Street's failure to support its legal claim with admissible

evidence, the trial court properly granted summary judgment.

*Trial court's award of attorney fees*

Wall Street makes four challenges to the trial court's award of attorney fees. First,

that the award of prearbitration fees was unwarranted under CR 11 and RCW 4.84.185.

Second, that postarbitration fees were improper because Wall Street had reasonable

grounds for requesting a trial de novo. Third, that the amount of fees awarded to All Star

for trial work was excessive because the preparation was duplicative. And fourth, that

public policy did not favor an award of fees due to All Star's wrongdoing at trial. We

address each claim in turn.

*Prearbitration attorney fees*

RCW 4.84.185 authorizes the trial court to award attorney fees if it finds an action

was "frivolous and advanced without reasonable cause . . . unless otherwise specifically

provided by statute." CR 11 similarly authorizes sanctions for filing a claim for an

improper purpose, or one that is not grounded in fact or law. A lawsuit brought for

purposes of harassment constitutes an improper purpose for which sanctions may be

15

imposed. *In re Recall of Lindquist*, 172 Wn.2d 120, 136, 258 P.3d 9 (2011). A trial

court's award of sanctions under either provision is reviewed for abuse of discretion.

*Kilduff v. San Juan County*, 194 Wn.2d 859, 874, 453 P.3d 719 (2019).

The trial court here adequately exercised its discretion in imposing attorney fees as

a sanction. The trial court pointed to the lack of evidence supporting Wall Street's claims

and the incoherence of many of its positions as the basis for sanctions. The record

supports this determination. Of Wall Street's nine original claims, seven were dismissed

at summary judgment for a complete lack of evidence. Wall Street presented very

little coherent evidence in support of its remaining two claims at trial. Wall Street's

case largely rested on Dr. Elkharwily's self-serving testimony and speculation. When

read in conjunction with the angry and accusative e-mails directed at Ms. Parker by

Dr. Elkharwily, the trial court could properly infer Wall Street's suit was not filed in

good faith, but with an intent to harass. The court did not abuse its discretion by

imposing attorney fees as a sanction under CR 11 and RCW 4.84.185.

*Postarbitration attorney fees*

Under RCW 7.06.060(1), "[t]he superior court shall assess costs and reasonable

attorneys' fees against a party who appeals the [arbitration] award and fails to improve

his or her position on the trial de novo." Costs and reasonable attorney fees means all

reasonably necessary expenses incurred after the request for a trial de novo is made.

RCW 7.06.060(2). Likewise, former MAR 7.3 requires a court to impose "costs and

reasonable attorney fees against a party who appeals the award and fails to improve the

party's position on the trial de novo."

"The purpose of the fee-shifting provision in [former MAR] 7.3 is 'to encourage

settlement and discourage meritless appeals.'" *Bearden v. McGill*, 190 Wn.2d 444, 448,

415 P.3d 100 (2018) (quoting *Niccum v. Enquist*, 175 Wn.2d 441, 451, 286 P.3d 966

(2012)). Former MAR 7.3 "deters frivolous appeals by penalizing pyrrhic victors: a party

who congests a trial court's docket by requesting a trial de novo in order to lose money

shall succeed in that endeavor, and parties who wish to appeal close calls do so at their

own peril." *Id.*

When determining whether an appellant achieved a better result in the trial

de novo, the trial court should compare (1) damages and statutory costs awarded by the

arbitrator, with (2) damages and statutory costs awarded by the trial court. *Id.* at 451. "If

a party offers to settle prior to trial, that settlement offer replaces the arbitration award

when determining whether the party who requested trial de novo improved his or her

position." *Nelson v. Erickson*, 186 Wn.2d 385, 388, 377 P.3d 196 (2016).

Here, the trial court appropriately awarded All Star its postarbitration attorney fees under RCW 7.06.060 and former MAR 7.3. At arbitration, Wall Street won a judgment of $7,949.00. All Star later offered Wall Street $2,796.30 to settle the matter. At the trial de novo, the court ruled against Wall Street on all of their claims, and awarded the defendants $1,321.57 on their counterclaim. Needless to say, Wall Street did not improve its position after trial. Accordingly, the court did not err by awarding All Star its postarbitration attorney fees.

*Reasonableness of fees*

Wall Street argues the trial court's fee award was unreasonable in light of the duplicative nature of All Star's work preparing for arbitration and the trial de novo. Our review is for abuse of discretion. *Berryman v. Metcalf*, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013).

The trial court did not abuse its discretion. The court made minimally sufficient findings, supporting its award in the face of Wall Street's claim of duplicative work. The trial court found the work by All Star's counsel to be reasonable and necessary. This adequately addressed Wall Street's arguments. Indeed, anyone who has had to retry a case knows that preparation can be extensive. The trial court's fee award was not an abuse of discretion.

18

*Public policy*

Finally, Wall Street attempts to argue the award of attorney fees was contrary to public policy because All Star engaged in wrongdoing at trial. Wall Street's argument appears to assume that it has prevailed against All Star. It has not. The record does not support Wall Street's public policy claim.

## APPELLATE ATTORNEY FEES

Both parties request attorney fees on appeal. We award fees to All Star.[5] RAP 18.1(a) allows a party to recover attorney fees or expenses incurred on appeal, so long as applicable law permits such a recovery. Under former MAR 7.3, a party who requested trial de novo after mandatory arbitration and fails to improve their position on appeal to the Court of Appeals must pay the other party's reasonable attorney fees. Given our agreement with the trial court's rulings, Wall Street has, on appeal, again failed to improve its position. As a result, All Star is entitled to an award of reasonable attorney fees.

---

[5] Wall Street's fee request lacks factual or legal support.

19

No. 37512-9-III
*Wall St. Apartments, LLC v. All Star Prop. Mgmt., LLC*

CONCLUSION

The orders on appeal are affirmed. All Star is awarded reasonable attorney fees, subject to compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Fearing, J.

20