FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG -6 AM 9: 41



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MATTHEW MILCIC and RACHEL MILCIC, individually and as a marital community, )
Appellants, )
v. )
JOHN ESTES and ANNE ESTES, individually and as a marital community, )
Respondents. )

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 76606-6-I

UNPUBLISHED OPINION

FILED: August 6, 2018

DWYER, J. — Matthew and Rachel Milcic sued John and Anne Estes for damages and other relief after the Estes cut branches off their trees, built an encroaching fence, painted the words "PULL YOUR WEEDS!" on the Milcics' side of the fence, and placed unwanted fill dirt on the Milcics' property. The trial court granted partial summary judgment for the Milcics on all of their causes of action, including nuisance, timber trespass, spite fence, and damage to land or property. Following a trial on damages, the court awarded the Milcics some, but not all, of their requested damages. The court denied their request for an award of attorney fees and costs.

The Milcics appeal the trial court's adverse rulings on damages and fees. We remand for further proceedings on the Milcics' request for attorney fees and costs. We otherwise affirm.

I

The Milcics and Estes are next door neighbors in Kirkland, Washington. In 2013, the Estes cut branches off trees located on the Milcics' property. Around the same time, the Estes began to build a fence along the parties' common boundary. When a dispute regarding fence encroachments arose, the parties submitted it to mediation.

In April 2014, the parties executed a settlement agreement whereby the Estes agreed, among other things, to remove both the excess dirt from the Milcics' property and portions of fence footings that were visible above ground.

In July 2014, the Estes painted the words "PULL YOUR WEEDS!" in white, 10-inch block letters on the Milcics' side of the Estes' fence. The words ran roughly the length of one fence panel.

The Milcics' attorney informed the Estes by letter that the Milcics would file suit if the Estes did not remove the message from the fence. The Estes did not respond.

In April 2015, the Milcics filed the present action. The complaint alleged several causes of action, including private nuisance, trespass, timber trespass, spite fence, quiet title and damages to land and property. Shortly thereafter, the Estes offered to remove the painted message if the Milcics dismissed their complaint. The Milcics rejected the offer, stating, "If you were willing to do so

2

voluntarily, . . . you could have removed the sign at any time for the past nine months. After enduring nine months of your shenanigans, the Milcics will not accept that meager proposal."

The Milcics moved for partial summary judgment, alleging there were no issues of material fact regarding the Estes' branch cutting, fence encroachments, and deposition of fill dirt on the Milcics' property. Following additional boundary surveys and supplemental briefing, the court granted partial summary judgment for the Milcics "on all . . . causes of action." The court granted the Milcics' equitable relief for the fence encroachments, including the removal of all encroaching portions of the fence. The court reserved damages and attorney fees for trial. The Estes sought, and this court denied, discretionary review of the partial summary judgment order.

In January 2017, the matter proceeded to trial solely on the issues of damages and attorney fees and costs. Rachel Milcic testified that the Estes cut branches off their trees and put fill dirt on their property without their permission. She said the branch removal ruined the beauty and privacy of the Milcics' property. The loss of the branches upset her and she did not sleep well. She also testified that the Milcics were not sure where the property line was when the branches were cut.

Rachel testified she was "shocked," "horrified," and "scared" when the Estes painted the "PULL YOUR WEEDS!" message on the fence facing the Milcics' property. She "had real trouble sleeping that night" and no longer felt that she and her children were safe. She testified that before the painted

3

message appeared, her family spent around 12 hours per week in her yard. After the message appeared, they spent less than an hour a week in the yard. She valued her use of the yard at $40 per day. She testified that the message was visible for 922 days.

On cross-examination, John Estes, appearing pro se, asked Rachel whether the Estes had ever offered to remove the fence message. The Milcics' counsel objected, citing ER 408 and arguing that the question impermissibly called for evidence of a settlement offer. The court overruled the objection stating, "Here liability has already been established because Judge Benton found in your favor on all those claims. So I don't think . . . ER 408 would preclude admission of this alleged offer to paint over the sign." Rachel then testified that there had been "one or more settlement offers," but that the Milcics found them insufficient.

Matthew Milcic corroborated much of his wife's testimony. He testified that Rachel was "distraught" upon discovering the cut branches, that they both love plants, and that neither of them slept well that night. He also testified that "[w]e were unsure where the property line was" until after the Estes' second and final branch cutting.

Matthew described his reaction to the "PULL YOUR WEEDS!" message as "shock and stunned." The Milcics did not have dinner that night and "didn't sleep well" for about a week. They also "didn't feel safe and secure" in their home anymore and were "mistrustful" of the Estes. As a result, the Milcics

4

installed a surveillance system to "protect our property" and to "capture any trespasses by the Esteses on our land." The system cost $1,035.30.

Matthew testified that the fence message could be seen from roughly 25 percent of their property and prevented the Milcics from enjoying their yard. Their "dreams and aspirations" for landscaping the yard "got instantly crushed into a reminder of, you don't get to enjoy this part of your property that you had hopes and dreams for." He estimated that the affected portion of his property had a market value of $152,500.

After the Milcics pulled the weeds and finished landscaping the area near the fence message, Matthew asked John Estes if he could remove the message within 10 days. John said, "Yeah, probably," but the message was not removed.

In October 2016, the Estes took down the fence panels displaying the message, but the words "PULL YOUR" were still visible through a coat of paint after the panels were reinstalled.

On cross-examination, Matthew conceded that he had not seen a doctor or any medical professional for his emotional distress and had no medical bills related to that distress. Matthew also conceded that he did not accept the Estes' April 2015 offer to remove the fence message. The court again overruled the Milcics' objection that the settlement evidence was inadmissible under ER 408.

Matthew acknowledged that after the parties' mediation, the Estes removed the fill dirt from the Milcics' property and took the cement "footers" down to grade as agreed. Following the court's ruling on partial summary judgment, the Estes removed all encroaching footers and fence posts.

John Estes testified that when he cut the branches on the Milcics' trees, he believed the trees were on his property. He stopped cutting branches as soon as the Milcics asked him to stop. He also complied with the mediation agreement by removing the fill dirt and cutting the footings to grade.

John testified that he painted the "PULL YOUR WEEDS!" message to protest the "weeds and invasive vegetation coming onto my property." He conceded that Matthew Milcic told him in August 2014 that he had pulled the weeds and that he wanted the message removed. Approximately nine months later, John offered to remove the message if the Milcics dismissed their complaint.

On cross-examination, the Milcics' counsel asked whether John had planned to leave the message on the fence until the Milcics filed suit. John responded, "I left it there because, even though they had cleaned up their side yard, I still saw all the debris on the front, I saw 18-inch dandelions in their front yard every time we drove past their house."

In closing argument, John argued in part that the Milcics "provided this court with no proof of emotional distress, no doctor notes, no medical bills, no professional diagnosis." The Milcics' counsel responded that "[d]octor's notes and physiological symptomology is not required to prove emotional distress damages" where the causal act is intentional. Counsel also argued that emotional distress damages "are subjective" and required the court "to rule based upon [whether] you find the plaintiffs were credible during their testimony on the stand."

6

The court ruled that the Milcics were entitled to some, but not all, of their alleged damages. It found in pertinent part as follows:

4. The Milcics have suffered $800 in damages for the June 15, 2013 survey which confirmed that the trees from which the defendants cut branches were on the plaintiffs' property . . . .

5. The 2015 survey that cost the Milcics $850 is not a recoverable item of damages.

6. *The $1,560.64 sought . . . for the installation of a surveillance system is not a reasonable amount of recoverable damages in this action.*

7. The tortious actions of the Esteses are the "but-for" or cause-in-fact of the Milcics incurring the expense of installing a surveillance system.

8. *The conduct of the defendants does not sufficiently constitute an award of damages for the plaintiffs' lost enjoyment of their property.*

9. The replacement cost for the two trees from which the defendants cut branches is $1,662.74.

10. The replacement cost for these two trees is an appropriate measure of damages in this case.

11. The plaintiffs also incurred $547.50 in recoverable damages to hire professional arborist Kristine Malloy to value the damaged trees.

12. The plaintiffs also incurred an additional $547.50 in recoverable damages to reasonably compensate Kristine Malloy to testify as an expert at trial.

13. The defendants' violations of the timber trespass statute were not casual or involuntary and the defendants did not have probable cause to believe that the land upon which such timber trespasses were committed was their own.

14. The $800 in damages for the survey, $1,662.74 in damages for the replacement cost of the trees, and the $1,095 in damages for expert witness fees were all proximately caused by the defendants'

violations of the timber trespass statute RCW 64.12.030 and should accordingly be trebled.

. . .

16. That amount of damages trebled is $10,673.22.

17. *The encroachment of the defendants' fence onto the plaintiffs' property was de minimis.*

18. *In light of the deminimis nature of the encroachment, an award of damages for said encroachment is not reasonable in this case.*

19. *The plaintiffs have not provided sufficient evidence to establish that they have suffered emotional distress.*

(Emphasis added.)

The court also entered the following conclusions of law:

1. The defendants proximately caused damages to the plaintiffs in the amount of $3,557.74 for the defendants' violations of the timber trespass statute RCW 64.12.030.

2. The defendants have not proven by a preponderance of the evidence that their violations of the timber trespass statute qualify for mitigation under RCW 64.12.040.

3. The plaintiffs are entitled to an award of treble damages for timber trespass in the amount of $10,673.22.

4. *The plaintiffs are not awarded damages for the cost of a surveillance system because the second prong of proximate cause —that is, legal cause—has not been met.*

5. *The plaintiffs are not awarded damages for the plaintiffs' lost enjoyment of their property because the level of conduct does not sufficiently constitute an award of damages.*

6. *The plaintiffs are not awarded damages for emotional distress.*

7. The plaintiffs are the prevailing parties in this action.

(Emphasis added.)

By separate order, the court denied the Milcics' request for an award of costs and attorney fees under RCW 4.24.630, stating:

> Any damage to plaintiffs' land was de minimis and this court did not award any damages as the result. Consequently, the court does not find that award of attorney's fees and costs are appropriate under RCW 4.24.630.

The Milcics appeal the court's rulings relating to damages and attorney fees.

II

The Milcics contend that the court erred in awarding no damages for their alleged lost enjoyment of their property on their trespass and private nuisance claims.[1] They claim they were entitled to such damages due to the significant length of time —922 days— that the fence message remained in place. They maintain the record does not support the trial court's finding and conclusion that the Estes' conduct did not warrant an award for the claimed damages.

We review a trial court's award of damages for abuse of discretion. Mason v. Mortg. Am., Inc., 114 Wn.2d 842, 850, 792 P.2d 142 (1990). The court abuses its discretion when its exercise of discretion is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" John Doe v. Puget Sound Blood Ctr., 117 Wn.2d 772, 778, 819 P.2d 370 (1991) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). We will reverse the amount of damages only if it is outside the range of relevant evidence, shocks the conscience, or results from passion or prejudice. Mason,

---

[1] Damages for nuisance may include lost enjoyment of the use of property. Miotke v. City of Spokane, 101 Wn.2d 307, 332, 678 P.2d 803 (1984).

114 Wn.2d at 850. The credibility and weight of witness testimony are matters solely for the trier of fact. Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wn.2d 22, 34, 891 P.2d 29 (1995).

Here, it is clear from the court's findings and conclusions that it determined the Estes' conduct was insufficient to warrant the Milcics' claimed lost enjoyment of property. This determination involved weighing the evidence relating to the entirety of the Estes' conduct, including their April 2015 offer to remove the painted message,[2] against the Milcics' reactions to those events. The court was free to discount or reject the Milcics' testimony regarding their alleged lost enjoyment. Although the court entered no findings on the latter point, the absence of a finding on a material issue is deemed a finding against the party with the burden of proof, here the Milcics. Pacesetter Real Estate, Inc. v. Fasules, 53 Wn. App. 463, 475, 767 P.2d 961 (1989).

On this record, and in light of our deference to the trial court's view of the weight and credibility of the evidence, we cannot say the court abused its discretion in declining to award damages for the Milcics' claimed lost enjoyment of their property.

III

The Milcics next contend that the trial court abused its discretion in failing to award them damages for alleged emotional distress caused by the Estes'

---

[2] Contrary to the Milcics' assertions, the court did not abuse its discretion in admitting and relying on the Estes' April 2015 offer to remove the painted message. 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 408.5, at 62 (6th ed. 2016) (noting that ER 408 only bars settlement offer evidence introduced by the offeree).

fence message and branch cutting. A plaintiff who proves liability for intentional wrongful conduct is entitled to damages for emotional distress "upon a showing of actual anguish or emotional distress." Cagle v. Burns & Roe, Inc., 106 Wn.2d 911, 912, 726 P.2d 434 (1986). The distress need not be severe and, contrary to the Estes' arguments below, the plaintiff need not demonstrate objective symptomology, medical bills, or a medical diagnosis. Kloepfel v. Bokor, 149 Wn.2d 192, 197-201, 66 P.3d 630 (2003); Nord v. Shoreline Sav. Ass'n, 116 Wn.2d 477, 482-85, 805 P.2d 800 (1991).

Here, the trial court found the Estes engaged in intentional wrongful conduct, including nuisance, timber trespass, and a spite fence. The trial court also found, however, that the Milcics "have not provided sufficient evidence to establish that they have suffered emotional distress." The Milcics challenge that finding, pointing to their testimony that they suffered initial shock and distress, trouble sleeping for a week, and ongoing feelings of insecurity and fear of further invasions. But the trial judge's evaluation of the sufficiency of the evidence includes determinations as to the weight and credibility of the evidence—matters that require our deference. The Milcics' counsel encouraged the court to make those determinations during closing argument, stating that the emotional distress claim was "subjective" and required the court "to rule based upon [whether] you find the plaintiffs were credible during their testimony."

Given the testimony and argument below and the deference we pay to the trial court's evaluation of the weight and credibility of the evidence, we cannot

11

say that the trial court erred in concluding that the Milcics did not prove their claimed damages for emotional distress.[3]

IV

The Milcics next contend that the trial court erred in concluding that the Estes' conduct was not the legal cause of their purchase and installation of a surveillance system. To determine if legal causation exists, a court considers whether "'as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability.'" Michaels v. CH2M Hill, Inc., 171 Wn.2d 587, 611, 257 P.3d 532 (2011) (quoting Schooley v. Pinch's Deli Mkt., Inc., 134 Wn.2d 468, 478-79, 951 P.2d 749 (1998)). The determination rests on "'mixed considerations of logic, common sense, justice, policy, and precedent.'" Michaels, 171 Wn.2d at 611 (internal quotation marks omitted) (quoting Schooley, 134 Wn.2d at 478-79).

The Milcics offer no relevant precedent supporting their argument regarding legal causation.[4] Nor do they advance any persuasive arguments supporting their claim that logic, common sense, justice, and policy favor the imposition of liability for the surveillance system. There was never any doubt as

---

[3] The Milcics claim that the court abused its discretion by excluding exhibit 47—a photo of their daughter playing in the area near the painted message. The party seeking review has the burden of providing this court with an adequate record to review the issues raised on appeal. Fahndrich v. Williams, 147 Wn. App. 302, 307, 194 P.3d 1005 (2008). Because exhibit 47 is not in the record before us, we need not address this claim. We note, however, that the photograph would have been largely cumulative of Matthew's testimony regarding his emotional response to seeing his daughter playing beneath the painted message.

[4] Citing Alcaraz v. State, 2002 WY 57, 44 P.3d 68 (2002), the Milcics argue that the Estes' repeated incursions onto their property reasonably justified, and warranted recovery for, a surveillance system for "deterring future trespasses." Alcaraz, however, is not germane. The Alcaraz court upheld restitution in a criminal case for a grocery store's installation of a surveillance system to investigate ongoing unsolved thefts.

to who had trespassed onto the Milcics' property. The Estes readily admitted cutting the branches, painting the message, and installing the fence. There was therefore no need for a surveillance system to catch the perpetrators, and no reason to believe that a surveillance system would act as a deterrent to future incursions. In addition, except for the branch cutting, the trespasses were de minimis incursions. Thus, the trial court did not err in concluding that the Estes' conduct was not a legal cause of the Milcics' surveillance system expenses.

V

The Milcics also claim that the trial court abused its discretion in failing to award nominal damages for injury to their land under RCW 4.24.630(1). The trial court ruled that any damage to the Milcics' land was "de minimis" and therefore did not warrant a damage award. In closing argument, the Milcics' counsel told the court:

> Now, I will note, Your Honor. That the damage-to-land piece is based upon the unauthorized placement of fill dirt. As Mr. Estes testified, that fill dirt was since removed and part of the landscaping work filled that area in with the Milcics' own dirt. So we're only seeking . . . $1 in nominal damages.

The court's decision to not award nominal damages was within the range of the evidence. There was no abuse of discretion.

VI

Last, the Milcics argue that once the trial court granted partial summary judgment on their claim for damage to land, it was required to award them attorney fees and costs under RCW 4.24.630(1). The statute states:

> Every person who goes onto the land of another and who removes timber, crops, minerals, or other similar valuable property from the land, *or wrongfully causes waste or injury to the land,* or wrongfully injures personal property or improvements to real estate on the land, is liable to the injured party for treble the amount of the damages caused by the removal, waste, or injury. For purposes of this section, a person acts "wrongfully" if the person intentionally and unreasonably commits the act or acts while knowing, or having reason to know, that he or she lacks authorization to so act. Damages recoverable under this section include, but are not limited to, damages for the market value of the property removed or injured, and for injury to the land, including the costs of restoration. *In addition, the person is liable for reimbursing the injured party for the party's reasonable costs, including but not limited to investigative costs and reasonable attorneys' fees and other litigation-related costs.*

RCW 4.24.630(1) (emphasis added).[5] We conclude that the Milcics were entitled to some of their fees and costs under this statute.

The question of a party's entitlement to attorney fees is an issue of law we review de novo. Bloor v. Fritz, 143 Wn. App. 718, 747, 180 P.3d 805 (2008). The reasonableness of a fee award is a matter within the trial court's discretion and is reviewed for abuse of that discretion. Bloor, 143 Wn. App. at 747. In the present case, the Milcics argued on summary judgment that the Estes violated RCW 4.24.630(1) by building a fence that encroached on their property and placing fill dirt on their property without permission.[6] In declining to award fees

---

[5] Subsection (2) of the statute explicitly excludes its application where liability for damages is provided under RCW 64.12.030, the timber trespass statute. RCW 4.24.630(2); Gunn v. Riley, 185 Wn. App. 517, 525, 344 P.3d 1225 (2015). RCW 64.12.030 contains no provision for the award of attorney fees. Herring v. Pelayo, 198 Wn. App. 828, 841, 397 P.3d 125 (2017).

[6] The Milcics argued below that they were entitled to $43,738.44 in fees under this statute, ER 904, and equitable principles of bad faith. They also argued that if the court declined to award the full amount of the requested fees, it should at least award them fees attributable to the damage to land claim, the Estes' baseless objections under ER 904, and the Estes' frivolous interlocutory appeal. The Milcics claimed they incurred $25,235.55 in fees for the damage to

14

and costs, the trial court ruled that "[a]ny damage to plaintiffs' land was de minimis and this court did not award any damages as the result. Consequently, the court does not find that award of attorney's fees and costs are appropriate under RCW 4.24.630." The Milcics contend that the plain meaning of the statutory language required an award of fees and costs once the court granted partial summary judgment on their claim for injury to their land. We agree as to one of their claimed injuries, but disagree as to the other.

In its partial summary judgment, the court granted the Milcics relief on their fence encroachment claim by ordering removal of the encroachments. In doing so, the court demonstrated that it found all the requirements for a violation of the statute, including "waste or injury to the land." RCW 4.24.630(1). At that point, the statute required an award of reasonable, segregated attorney fees and costs incurred prior to the entry of summary judgment on that claim.[7]

The court did not err, however, in denying the Milcics fees and costs for the fill dirt claim that went to trial. Unlike the Milcics' fence encroachment claim, the fill dirt claim did not result in a finding of damage or award of relief on partial summary judgment. Instead, the court reserved those issues for trial. After trial,

---

land claim, $6,194.75 for the Estes' interlocutory appeal, and $1,657.20 for work related to the Estes' ER 904 objections.

[7] After reviewing the pleadings and record, we view this as a case in which segregation of fees and costs is entirely possible. On remand, the court should segregate the fees incurred on this claim from those incurred on the other claims. We reiterate that the party seeking the award of fees has the burden of proof. Loeffelholz v. Citizens for Leaders with Ethics Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690-91, 82 P.3d 1199 (2004). Failure to segregate, where segregation is possible, may constitute failure to meet the burden of proof, which would justify a denial of a fee award. Loeffelholz, 119 Wn. App. at 692. In the process of determining the appropriate award, the trial court should address the Milcics' alternate bases for fees and costs under ER 904 and bad faith. By directing the trial judge's attention to these alternate requests, we do not indicate how the requests should be decided.

the court concluded that the Milcics were not damaged by the fill dirt, which the Estes had removed, and therefore fees and costs were not available under the statute for that claim. We agree. Absent compensable damage, there was no "waste or injury to the land" and, therefore, no violation of the statute requiring fees and costs on the fill dirt claim.

The Milcics also request fees on appeal. RAP 18.1 allows this court to award reasonable attorney fees or expenses on appeal when applicable law authorizes such an award. RCW 4.24.630 states that a person violating the statute "is liable" for reasonable attorney fees and costs. We grant the Milcics' request for reasonable attorney fees and costs on appeal, conditioned on their segregation of the amount attributable to their claim for damage to land from fence encroachments and their compliance with RAP 18.1.

We deny the Milcics' request for attorney fees incurred during the Estes' interlocutory appeal.

Affirmed in part and remanded for proceedings consistent with this opinion.

We concur: